IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN RITCHIE ) | |
| ) | |
| Plaintiff, ) | Cause No. |
| ) | |
| v. ) | Division No. |
| ) | |
| ) | |
| MISSOURI DEPARTMENT ) | |
| OF CORRECTIONS ) | |
| ) | |
| **Serve At:** ) | |
| **Anne Precythe, Director** ) | |
| **2729 Plaza Drive** ) | |
| **Jefferson City, MO 65102** ) | |
| ) | **JURY TRIAL DEMANDED** |
| CORIZON, LLC ) | |
| ) | |
| **Serve At:** ) | |
| **Registered Agent, CT Corporation** ) | |
| **120 S. Central Ave., #400** ) | |
| **Clayton, MO 63105** ) | |
| ) | |
| GEORGE LOMBARDI, individually and ) | |
| in his official capacity as Director of the ) | |
| Missouri Department of Corrections ) | |
| ) | |
| THOMAS PRYOR, in his individual ) | |
| capacity ) | |
| ) | |
| HEYDEN HUCKE, in his individual ) | |
| capacity ) | |
| ) | |
| THOMAS BREDEMAN, in his individual ) | |
| capacity ) | |
| ) | |
| J. COFIELD, in his individual ) | |
| capacity ) | |
| ) | |
| PAMALA SWARTZ, in her individual ) | |
| capacity ) | |
| ) | |
| COLETTE ROGERS, in her individual ) | |

1

| capacity | ) |
| WANDA LARAMORE, in her individual capacity | ) ) ) |
| NARENDA KHENGAR, in his individual capacity | ) ) ) |

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff John Ritchie, by and through the undersigned counsel, and for his Complaint, states to the Court as follows:

### INTRODUCTION

1. The Missouri Department of Corrections ("MDOC") and Corizon, LLC ("Corizon") have created and maintained a policy or custom and practice of systematically denying necessary medical care to inmates diagnosed with Hepatitis C infections (HCV), including Plaintiff John Ritchie ("Plaintiff"), thereby discriminating against him and causing severe pain, illness, and injury. The individual defendants have denied necessary medical care to Plaintiff, who has been diagnosed with chronic HCV and have caused him unnecessary pain and suffering and liver cancer.

2. Plaintiff is incarcerated in the MDOC and scheduled to be released in or around 2023. He has serious health complications, including cancer, which has resulted from his chronic HCV. Defendants refused to provide medical treatment to Plaintiff that is consistent with current and prevailing medical standards for which Plaintiff has a substantial need. As a result, Defendants harmed, and continue to harm, Plaintiff.

### JURISDICTION AND PARTIES

3. Plaintiff is an adult individual residing at the Jefferson City Correctional Center ("JCCC") in Jefferson City, State of Missouri, and he seeks injunctive and declaratory relief as well as damages.

4. Defendant MDOC is a state executive agency that has the power to sue and be sued pursuant to Mo. Rev. Stat. § 217.020. MDOC is responsible for providing treatment for the serious medical needs of individuals in its custody.

2

5. Defendant Corizon is the health care provider for all MDOC facilities. Defendant Corizon is a Missouri limited liability company with its principal place of business located in Brentwood, Tennessee. At all times relevant, Defendant Corizon acted by and through its agents, servants, contractors and/or employees, who were at all times acting within the course and scope of their employment.

6. Defendant George Lombardi is the Director of the MDOC. He is responsible for the operations of MDOC, including adopting, approving, and implementing the policies applicable to the prisons that MDOC operates throughout the State of Missouri. Upon information and belief, Director Lombardi is the final policymaker for MDOC. He is sued in his official capacity and in his individual capacity.

7. Defendant Thomas Pryor was, at all times relevant to this complaint, a physician at JCCC, a treating physician of Plaintiff and an agent, servant, contractor and/or employee of Defendant Corizon. He is sued in his individual capacity.

8. Defendant Heyden Hucke was, at all times relevant to this complaint, a physician at JCCC, a treating physician of Plaintiff and an agent, servant, contractor and/or employee of Defendant Corizon. He is sued in his individual capacity.

9. Defendant Thomas Bredeman was, at all times relevant to this complaint, a physician and associate regional medical director who was responsible for the approval and administration of Corizon's protocols for the management and treatment of chronic HCV, reviewed and denied grievances related to treatment for Hepatitis C viral infections and who also acted as a treating physician of Plaintiff and an agent, servant, contractor and/or employee of Defendant Corizon. He is sued in his individual capacity.

10. Defendant J. Cofield was, at all times relevant to this complaint, director of operations of constituent services over JCCC and reviewed and denied grievances. Cofield was an agent, servant, contractor and/or employee of Defendant Corizon. He is sued in his individual capacity.

11. Defendant Pamala Swartz was, at all times relevant to this complaint a nurse and treating health care provider at JCCC, and an agent, servant, contractor and/or employee of Defendant Corizon. She is sued in her individual capacity.

12. Defendant Colette Rogers was, at all times relevant to this complaint, a registered nurse and director of nursing at JCCC who reviewed and denied a grievance related to treatment for HCV. She was an agent, servant, contractor and/or employee of Defendant Corizon. She is sued in her individual capacity.

13. Defendant Wanda Laramore was, at all times relevant to this complaint, a health services administrator who reviewed and denied a grievance related to treatment for HCV. She was an agent, servant, contractor and/or employee of Defendant Corizon. She is sued in her individual capacity.

14. Defendant Dr. Narenda Khengar was, at all times relevant to this complaint, a physician and medical director at JCCC who reviewed and denied a grievance related to treatment for HCV. Defendant Khengar was an agent, servant, contractor and/or employee of Defendant Corizon. He is sued in his individual capacity.

15. Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for Defendants' deprivation of Plaintiff's constitutionally protected liberty rights by reason of Defendants' violation of Plaintiff's substantive and due process rights pursuant to the $8_{th}$ and $14_{th}$ Amendments of the United States Constitution.

16. This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 and § 1343 because the matters in controversy arise under federal law and the United States Constitution. This Court has supplemental jurisdiction over Count III of the Complaint pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in the Western District of Missouri.

## FACTS COMMON TO ALL COUNTS

4

Case 2:19-cv-04216-BCW   Document 1   Filed 12/05/19   Page 4 of 18

18. HCV is a viral infection that attacks the liver and causes hepatitis or liver inflammation.

19. Upon information and belief, at least 10-15% of the population under the supervision, care, and custody of the MDOC is infected with HCV.

20. Plaintiff was incarcerated in 2004 when he was first diagnosed with HCV.

21. He returned to the prison system and has been incarcerated at JCCC since 2010 or 2011; he has had a diagnosis of HCV for the majority, if not all, of his imprisonment.

22. In mid-2013, Plaintiff was informed by Dr. Rex Hardman that he qualified for a liver biopsy for Hepatitis C staging.

23. Plaintiff underwent a biopsy, was subsequently informed he had Stage 3 fibrosis and Grade 2 inflammation and was, therefore, a candidate for "triple therapy."

24. The "triple therapy" option would have included treatment with Interferon.

25. Plaintiff had seen two friends die from "triple therapy" treatment and elected not to proceed with the offered therapy regimen.

26. In or around late 2014, the FDA approved Harvoni, a safer and more effective drug for the treatment of HCV.

27. Similarly, several other direct-acting antiviral (DAA) drugs were subsequently approved which are all administered orally, have few side effects, and have proven effective.

28. With these drugs, most HCV cases can be cured in just a few months; over 90 percent of patients treated with any of these drugs are cured.

29. In or around September 2016, Plaintiff began to request treatment with Harvoni, a drug that in clinical trials has achieved a cure rate of 94% after 12 weeks.

30. Over the course of the next several months, Plaintiff made more requests for initiation of treatment.

31. Defendant Rogers denied a request on or around January 19, 2017 through a response to Plaintiff's IRR and advised Plaintiff to address changes in his condition through the sick call process.

32. On February 13, 2017, Defendant Dr. Pryor in a "doctor encounter," noted Plaintiff to be a candidate for treatment of Hepatitis C.

33. In February 20, 2017, Defendant Dr. Hucke documented edema, abdominal discomfort, and a burning sensation and noted that Plaintiff had "progressive HEP C" with an APRI of 1.2 and that he seemed to be a "good candidate for enrollment in the Harvoni prescription initiation program."

34. On February 23, 2017, Plaintiff appealed his grievance decision and documented the same complaints he had previously made to Dr. Hucke.

35. Dr. Bredeman ordered an ultrasound of the abdomen, which was performed on March 2, 2017.

36. Later in March 2017, Dr. Pryor reviewed the results of the abdominal ultrasound and noted a plan to follow up on-site to submit for treatment of Hepatitis C.

37. In a grievance response on March 30, 2017, Defendant Laramore and Defendant Dr. Khengar said Plaintiff had an "APRI score" that was "greater than 2," that he had been submitted for further review, and that further testing might be required prior to final approval.

38. In a May 17, 2017 grievance appeal response, Defendant Cofield and Defendant Dr. Bredeman indicated Plaintiff was getting appropriate care and medical treatment.

39. Plaintiff exhausted his administrative remedies through the grievance process where his requests for medical treatment were met with responses that were untimely and/or violated prison policy.

40. In August 2017, Dr. Pryor noted that Plaintiff was "Priority 3," was to be seen "onsite to prevent" the need for double visits and was to receive a comprehensive metabolic panel every 6 months.

41. On December 8, 2017, an ultrasound of the liver was done at Capital Region Medical Center, and it was read to show a 2.7 cm hyperechoic focus in the liver with differential diagnoses at the time including artifact, focal hepatic steatosis or mass.

42. Because of the ultrasound findings, Pamela Schwarz recommended a CT or MRI, which was performed in January 2018 and showed 2 mass lesions on the left lobe of the liver. It was noted at the time these lesions could be indicative of a more aggressive process such as hepatic cancer and that a percutaneous biopsy should be considered.

43. More than six months lapsed between when the liver biopsy was documented as being indicated and when it was finally performed on June 28, 2018.

44. The biopsy results were deemed to be consistent with hepatocellular cancer.

45. On August 1, 2018, Dr. Eston Schwartz noted Plaintiff had Stage II hepatocellular carcinoma, and he was referred to the University of Missouri for oncological evaluation.

46. Plaintiff developed liver cancer only after the preventable progression of HCV.

47. Plaintiff was eventually started on a chemotherapy regimen.

48. Defendant Corizon has often been unable to provide Plaintiff with his prescribed chemotherapy treatment, indicating they have "run out" of the pills and causing gaps and/or delays in treatment.

49. Plaintiff is still not receiving Harvoni, or any other medication for treatment of his Hepatitis C.

## COUNT I
### Claim for Damages for Deprivation of Eighth Amendment Right to Medical Care Against Defendants Pryor, Hucke, Bredeman, Cofield, Swartz, Rogers, Laramore, and Khengar

50. Plaintiff restates, realleges and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 49 above as if more fully set forth herein.

51. Defendants Hucke, Pryor, and Swartz exhibited deliberate indifference by denying HCV treatment, failing to provide Plaintiff with any HCV treatment and failing to conduct proper testing, monitoring, and consulting.

52. Defendants Bredeman, Cofield, Rogers, Laramore, and Khengar knew of Plaintiff's chronic HCV, denied HCV-related grievances, and exhibited deliberate indifference by failing to direct treaters to provide HCV treatment and to conduct proper testing, monitoring, and consulting.

53. The acts and omissions of Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar in failing to provide or failing to direct that medical care including Harvoni treatment, a liber biopsy, and chemotherapy be provided, and in delaying such care, were ongoing and continuous and constitute deliberate indifference to the serious medical needs of prisoners infected with HCV and prisoners with cancer, and they thereby violate the Eighth Amendment to the United States Constitution.

54. At all times relevant, Plaintiff had a serious medical need for treatment of his HCV with DAA drugs and of his cancer with chemotherapy.

55. At all times relevant, Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar were aware of Plaintiff's serious need for medical care.

8

56. At all times relevant, Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar acted with deliberate indifference, failed to provide the medical care, or failed to direct that the medical care be provided.

57. As a direct and proximate result of the failure of Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar to provide care or direct that care be given, Plaintiff was harmed and endured pain, suffering, discomfort and mental anguish, and sustained significant and permanent injuries to his body as a whole including damage to his liver and cancer.

58. As a direct and proximate result of the failure of Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar to provide care or direct that care be given, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

59. Further, the acts and omissions of Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

60. In addition, in their actions described herein, Defendants Hucke, Pryor, Swartz, Bredeman, Cofield, Rogers, Laramore, and Khengar acted pursuant to and in accordance with the following policies and customs of Defendants Lombardi and Corizon:

   a. withholding treatment with DAA drugs from persons diagnosed with HCV and chemotherapy drugs from persons diagnosed with cancer;

   b. not providing drug treatment to all inmates with HCV, or even all inmates with chronic HCV, in deliberate indifference to the serious medical need for treatment and in violation of the standard of care;

   c. using an APRI score – which measures the progression of fibrosis or cirrhosis – to determine whether a person should be treated, in deliberate indifference to serious medical needs and in violation of the standard of care;

9

d. not undertaking liver biopsies or other methods of determining the stage of fibrosis or cirrhosis and relying exclusively on APRI score to determine that stage, in deliberate indifference to serious medical need and in violation of the standard of care;

e. failing to even consider providing treatment to HCV-positive inmates unless they have an "APRI score" above 2.0 that persists for several months, in deliberate indifference to serious medical need and in violation of the standard of care;

f. disregarding independent diagnoses of cirrhosis or significant hepatic fibrosis in making treatment decisions, in deliberate indifference to serious medical need and in violation of the standard of care;

g. basing treatment decisions on cost, rather than on need for treatment, in deliberate indifference to serious medical need and in violation of the standard of care;

h. not initiating or referring patients for cancer treatment and of failing to provide chemotherapy as prescribed to inmates with cancer diagnoses in deliberate indifference to the serious medical need for treatment and in violation of the standard of care.

WHEREFORE, Plaintiff prays this Court enter judgment in Count I herein in favor of Plaintiff and against Defendants Pryor, Hucke, Bredeman, Cofield, Swartz, Rogers, Laramore, and Khengar and award him compensatory damages; punitive damages; Plaintiff's costs, including reasonable attorneys' fees under 29 U.S.C. § 1988 and other relevant provisions of law; and allow such other and further relief to which Plaintiff may be entitled.

## COUNT II
### Claim for Damages for Deprivation of Eighth Amendment Right to Medical Care Against Defendants Lombardi and Corizon

61. Plaintiff restates, realleges and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 60 above as if more fully set forth herein.

62. At all times relevant, Defendants Lombardi and Corizon were responsible for the operations of MDOC, including adopting, approving, and implementing the policies applicable to the prisons that MDOC operates throughout the State of Missouri.

10

63. At all times relevant, while Plaintiff was in the custody and under the control of MDOC, Defendants Lombardi and Corizon were deliberately indifferent to and acted in conscious disregard of Plaintiff's constitutional rights in that they had in place the policies and customs set forth above in Paragraph 60 (a)-(h).

64. Through these policies and customs, which were persistent and widespread and were ongoing and continuous, Defendants Lombardi and Corizon recklessly disregarded the substantial risk of serious harm to all inmates, including Plaintiff.

65. Through these policies and customs, Defendants Lombardi and Corizon were deliberately indifferent to Plaintiff's known serious medical needs and deprived him of the right to be free from cruel and unusual punishment as guaranteed by the Eighth and Fourteenth Amendments of the United States Constitution.

66. As a direct and proximate result of Defendants Lombardi's and Corizon's unconstitutional policies and customs, Plaintiff's serious medical needs were ignored and untreated, and he was harmed and endured pain, suffering, discomfort and mental anguish, and sustained significant and permanent injuries to his body as a whole including damage to his liver and cancer.

67. As a direct and proximate result of Defendants Lombardi's and Corizon's unconstitutional policies and customs, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

68. Further, the acts and omissions of Defendants Lombardi and Corizon, as described above, were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

WHEREFORE, Plaintiff prays this Court enter judgment in Count II herein in favor of Plaintiff and against Defendants Lombardi and Corizon and award him compensatory damages; punitive damages; Plaintiff's costs, including reasonable attorneys' fees under 29 U.S.C. § 1988 and other relevant provisions of law; and allow such other and further relief to which Plaintiff may be entitled.

## COUNT III

### Negligence Against Defendants Corizon, Pryor, Hucke, Bredeman, Cofield, Swartz, Rogers, Laramore, and Khengar

69. Plaintiff restates, realleges and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 68 above as if more fully set forth herein.

70. Defendant Corizon, by and through its health care providers, including but not limited to Defendants Pryor, Hucke, Bredeman, Cofield, Swartz, Rogers, Laramore, and Khengar failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of Defendants' profession, and were thereby negligent in one or more of the following respects:

   a. Failing to provide Plaintiff with any HCV treatment;

   b. Failing to conduct proper testing, monitoring, and consulting;

   c. Failing to direct treaters to provide HCV treatment and to conduct proper testing, monitoring, and consulting;

   d. Failing to provide or failing to direct that medical care including Harvoni treatment, a liver biopsy, and chemotherapy be provided, and in delaying such care.

71. As a direct and proximate result of the failure of each Defendant named herein, Plaintiff was harmed and endured pain, suffering, discomfort and mental anguish, and sustained significant and permanent injuries to his body as a whole including damage to his liver and cancer.

12

72. As a direct and proximate result of the failure of each Defendant named herein, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

73. The acts and omissions of each Defendant named herein were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

74. Plaintiff remains confined and is still under the care and treatment of Corizon and its agents, servants, contractors and/or employee and the violations are ongoing and continuing in nature.

WHEREFORE, Plaintiff prays this Court enter judgment in Count III herein in favor of Plaintiff and against Defendants Corizon, Pryor, Hucke, Bredeman, Cofield, Swartz, Rogers, Laramore, and Khengar and award him compensatory damages; punitive damages; and allow such other and further relief to which Plaintiff may be entitled.

**COUNT IV**
**Claim for Damages for Violation of the Americans with Disabilities Act**
**(Against Defendant MDOC)**

75. Plaintiff restates, realleges and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 74 above as if more fully set forth herein.

76. Subtitle A of Title II of the Americans with Disabilities Act (ADA) prohibits public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131-12134. Regulations implementing subtitle A are codified at 28 C.F.R. part 35.

77. Title II's definition of "public entity" includes any state or local government or "any department, agency … or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1)(A),(B).

78. Defendant MDOC is a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

79. Plaintiff has a disability within the meaning of 42 U.S.C. § 12102(1) and 28 C.F.R. § 35.104.

80. Plaintiff is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12131(s) and 28 C.F.R. § 35.104 because he meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by MDOC other than the fact he requires reasonable modifications to rules, policies, practices, the removal of barriers, or the provision of auxiliary aids and services.

81. MDOC subjected Plaintiff to discrimination by withholding appropriate treatment that would have cured his disability (i.e., HCV) and prevented his injuries including his cancer, although MDOC does not withhold life-saving treatments from individuals with different disabilities. This denial of treatment and discrimination violates 42 U.S.C. § 12132 (and the regulations promulgated under it – 28 C.F.R. Part 35) which states: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

82. As a direct and proximate result of the above-mentioned acts and omissions of Defendant MDOC, Plaintiff was harmed.

83. Further, the acts and omissions of Defendant MDOC were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

WHEREFORE, Plaintiff prays this Court enter judgment in Count IV in favor of Plaintiff and against Defendant MDOC and award Plaintiff compensatory damages; award him punitive damages; award Plaintiff's costs, including reasonable attorneys' fees under 29 U.S.C. § 794a and other relevant provisions of law; and allow such other and further relief to which Plaintiff may be entitled.

## COUNT V
## Claim for Injunctive Relief
### (Against Defendants Lombardi, MDOC and Corizon)

84. Plaintiff restates, realleges and incorporate by reference herein each and every allegation contained in Paragraphs 1 through 83 above as if more fully set forth herein.

85. At all times pertinent to this action, Defendants Lombardi, MDOC, and Corizon were constitutionally required to provide reasonable, effective and adequate medical care and treatment of Plaintiff's cancer, including the provision of prompt referrals to specialists and medical providers qualified to perform all necessary testing and to determine the appropriate medical therapy and procedures to treat Plaintiff's cancer and the provision of medication in accordance with his chemotherapy regimen.

86. In addition, in order to carry out their responsibilities and properly delegate duties to their agents, Defendants were responsible for establishing policies and procedures to affect the prompt and appropriate administration of medical care and treatment to its inmates.

87. Upon information and belief, at times pertinent to this action, Defendant Corizon was obligated as an agent of Defendants Lombardi and MDOC to administer reasonable, prompt

15

and effective medical care to MDOC inmates, including the prompt referral of inmates to appropriate specialists and the scheduling of necessary examinations and procedures, and to establish or adhere to policies and procedures to effect their responsibilities as administrators.

88. The treatment currently prescribed by Corizon and MDOC has been deficient.

89. At least one specialist has told Plaintiff about a recommended course of treatment for his HCV that Corizon and MDOC have failed to provide.

90. Undersigned counsel has obtained what he believes to be piecemeal medical records in response to a request to MDOC for Plaintiff's medical documentation and does not have a clear picture of Plaintiff's current course of treatment and what potential remedies may be available to him.

91. Given the urgency of determining adjuvant therapy to treat Plaintiff's cancer, there is no medical justification for defendants' delay in providing appropriate follow-up care to Plaintiff, including evaluation by an oncologist and a radiation oncologist to determine the appropriate therapy to treat and prevent the spread of his cancer.

92. As an inmate in the state corrections system, Plaintiff has a constitutional right to reasonable and adequate medical care from the defendants pursuant to the Eighth and Fourteenth Amendments to the United States Constitution.

93. Defendants violated Plaintiff's constitutional rights in denying him necessary and urgent medical care and treatment for his cancer. Specifically, Defendants' above conduct constitutes deliberate indifference to Plaintiff's urgent needs for treatment of his cancer as follows:

> a. In deliberately and intentionally denying Plaintiff the urgent and critical care and treatment which he needed;
>
> b. In ignoring or disregarding the known substantial risk of serious harm to Plaintiff created by the excessive and repeated delays in providing radiological

16

    testing, biopsies and in providing appropriate follow-up care and therapy, delays which are well-documented in Defendants' files;

  c. In delaying the treatment which exacerbated Plaintiff's injuries and unnecessarily prolonged Plaintiff's pain;

  d. In failing to establish and/or adhere to appropriate policies and procedures for the treatment of serious medical needs of Plaintiff;

  e. In failing to provide chemotherapy pills in accordance with the regimen provided to Plaintiff.

94. Defendants' conscious disregard of the risks facing Plaintiff violates all standards of decency.

95. As a proximate result of Defendants' continuing violations of Plaintiff's constitutional rights, Plaintiff has suffered and is suffering severe life-threatening conditions from his cancer.

96. If Defendants had provided reasonable and adequate medical care, as repeatedly advised by his Doctors, Plaintiff's cancer would have been treatable and his condition would have improved.

97. In the absence of reasonable and adequate treatment, Plaintiff's condition deteriorated and he is at increased risk of the spread of his disease which could threaten his life.

98. As set forth below, Plaintiff is in need of immediate injunctive relief to ensure that he receive urgent medical care by cancer specialists who can evaluate his condition, determine the appropriate treatment, consider potential options of chemotherapy, radiation or additional surgery to treat his cancerous condition, and to help prevent the spread of his disease and save his life.

WHEREFORE, Plaintiff prays this Court enter a preliminary injunction ordering and directing Defendants Lombardi, MDOC, and Corizon to provide immediate, urgent and adequate medical treatment for Plaintiff's life-threatening liver cancer; award Plaintiff's costs, including

reasonable attorneys' fees under 29 U.S.C. § 794a and other relevant provisions of law; and allow such other and further relief to which Plaintiff may be entitled.

                KHAZAELI WYRSCH LLC

                By: /s/ James R. Wyrsch
                    James Wyrsch, # 53197
                    Javad Khazaeli, # 55735
                    Kiara Drake, #67129
                    911 Washington Avenue, Suite 211
                    St. Louis, MO 63101
                    314-288-0777
                    james.wyrsch@kwlawstl.com
                    Attorneys for Plaintiff