# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

JOHN RITCHIE                          )
                                      )
            Plaintiff,                )            Cause No. 2:19-cv-04216-BCW
                                      )
v.                                    )
                                      **)**
MISSOURI DEPARTMENT OF                )
CORRECTIONS, et al.,                  )
                                      )
            Defendants.               )

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO DEFENDANT HEYDEN HUCKE'S MOTION FOR JUDGMENT ON THE PLEADINGS

COMES NOW, Plaintiff John Ritchie and submits the following Suggestions in Opposition to Defendant Heyden Hucke's Motion for Judgment on the Pleadings:

## INTRODUCTION

This case is premised on an ongoing and continuous denial of medical care. Plaintiff lives with untreated HCV and cancer that is not being addressed in accordance with recommendations. Plaintiff seeks damages for the harm caused by his conditions and injunctive relief to prevent further harm.

Before the Court is Defendant Heyden Hucke's Motion for Judgment on the Pleadings. Defendant Hucke argues that Count I of the Complaint for deliberate indifference fails to allege facts to indicate Defendant Hucke "denied him HCV treatment." Further, Defendant Hucke argues that Count III of the Complaint for negligence is barred by the two-year statute of limitations for medical malpractice claims. Plaintiff's Complaint clearly demonstrates claims upon which relief can be granted. The motion should be denied. Alternatively, Plaintiff requests leave to file an Amended Complaint. Defendant Hucke could not be prejudiced by an Amended Complaint as the

1

parties are still engaging in written discovery, the case is not set for trial until late 2021, and the parties have agreed to mediate in July 2020.

## FACTS

Plaintiff is a 62-year-old man who has been incarcerated at JCCC since 2010 or 2011. *Complaint*, ¶ 21. He has had a Hepatitis C viral infection ("HCV") for the majority, if not all, of his imprisonment. *Id*. at ¶¶ 20-21. HCV attacks the liver, causes hepatitis or liver inflammation, and infects a large percentage of the prison population. *Id*. at ¶¶18-19.

In mid-2013, while imprisoned, Plaintiff was found to be a candidate for treatment of HCV and was offered treatment that he declined. *Complaint*, ¶¶ 23-25. Subsequently, safer and more effective drugs – DAA therapy - became available, had few side effects, and were proven effective. *Id*. at ¶¶ 27-28. With these drugs, most HCV cases can be cured in just a few months; over 90 percent of patients treated with any of these drugs are cured. *Id*. at ¶ 29.

In this context – shortly after Plaintiff began requesting treatment with a DAA medication and several years after he was deemed to need HCV treatment – Defendant Hucke, a physician at JCCC and a treater of Plaintiff, saw Plaintiff. *Complaint*, ¶ 8. At her February 20, 2017 exam, Defendant Hucke documented edema, abdominal discomfort, and a burning sensation; and she noted that Plaintiff had "progressive HEP C" with an APRI of 1.2 and seemed to be a "good candidate for enrollment in the Harvoni prescription initiation program." *Id*. at ¶ 33. As Defendant Hucke concedes in her motion, she determined at that time Plaintiff was "a good candidate for HCV treatment." *See* Doc. 49, p. 5.

Yet, Defendant Hucke failed to provide such treatment and failed to direct that medical care including Harvoni treatment be provided. *Complaint*, ¶ 53. She failed to conduct proper testing, monitoring, and consulting. *Id*. at ¶ 51. As alleged in Paragraph 1 of the Complaint,

2

Defendant Hucke is one of several medical providers who "denied necessary medical care to Plaintiff" for chronic HCV, causing damages. *Id*. at ¶ 1.

## LEGAL STANDARD

In ruling on a motion to dismiss, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences from the complaint in favor of the nonmoving party. *Breedlow v. Earthgrains Baking Cos*., 140 F.3d 797, 798-99 (8ᵗʰ Cir. 1998). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). To be properly pled, while more is required than an "unadorned, the-defendant-unlawfully-harmed-me accusation[,]" the rules no not require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ARGUMENT

I. **Defendant Hucke's Motion for Judgment on the Pleadings on Count I of Plaintiff's Complaint Should be Denied Because the Complaint Sufficiently States a Claim of Deliberate Indifference by Defendant Hucke.**

With a claim of constitutionally inadequate medical care, a plaintiff must allege a defendant acted with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). There must be an "objectively" serious medical need that the defendant "subjectively" knew of but disregarded. *Dulaney v. Carnahan*, 132 F.3d 1234, 1239 (8ᵗʰ Cir. 1997).

Prisoners may prove deliberate indifference by showing that the total deprivation of medical care resulted in "pain and suffering" or "a lingering death." *Estelle*, 429 U.S. at 103. Medical treatment that is grossly incompetent or inadequate can be deliberate indifference. *See e.g., Smith v. Jenkins*, 919 F.2d 90, 92-93 (8ᵗʰ Cir. 1990) *citing Cotton v. Hutto,* 540 F.2d 412, 414 (8ᵗʰ Cir. 1976); *see Robinson v. Moreland,* 655 F.2d 887 (8ᵗʰ Cir. 1981). Similarly, when the need for

3

treatment is obvious, medical care which is so cursory as to amount to no treatment at all, or that which may constitute recklessness, may amount to deliberate indifference. *See Starbeck v. Linn County Jail*, 871 F.Supp. 1129, 1146-47 (N.D. Iowa 1994); *Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) (inmate physician assistant saw prisoner several times but never notified doctor of injury and never obtained an x-ray).

Allegations of inaction in the face of a serious complaint suffice to establish a claim. *See Robinson*, 655 F.2d at 890 (noting that knowledge of the need for medical care and intentional refusal to provide or arrange for that care can surpass negligence and constitute deliberate indifference); *Smith*, 919 F.2d at 92-93 (reversing summary judgment for psychiatrist who terminated psychiatric medication on the basis that it was not clinically indicated, even though provided before arrival to prison, and finding that lower court erred as a matter of law in ruling that mere proof of medical care by a doctor consisting of diagnosis only sufficed to disprove deliberate indifference); *Starbeck*, 871 F.Supp. at 1146-47 (failure to take affirmative steps to provide an inmate with recommended treatment).

Here, Plaintiff's Complaint alleges inaction and the denial of necessary medical care by Defendant Hucke. *See Complaint*, ¶¶ 51, 53, 1 (Defendant Hucke and several other medical providers "denied necessary medical care to Plaintiff" for chronic HCV, causing damages). She may not have been the final decision-maker and she may not have documented her denial; however, it has been more than three years since she examined him and deemed him to be a candidate for Harvoni. During that time, she did not personally provide him with Harvoni. Nor did she direct any other providers, or anyone else within MDOC or Corizon, to give Plaintiff what she absolutely knew was and continued to be necessary.

At the time of her note, Harvoni and other DAA drugs were already on the market, had been proven safe and effective for treatment of chronic HCV patients. Defendant Hucke knew this, which

4

is presumably why she believed it appropriate for Plaintiff to receive treatment. She also would have known through his medical records that Plaintiff had been deemed a candidate for a different, less effective, less safe drug several years prior to this encounter. Yet despite knowledge of the benefit of DAA treatment and the risk of failure to medicate Plaintiff, Defendant Hucke did not provide him with treatment and did not direct anyone within MDOC or Corizon to provide the drug. This inaction amounts to a total deprivation and refusal of care.

Defendant Hucke suggests that by making a note of having assessed Plaintiff, she somehow exculpated herself from claims of deliberate indifference. *See* Doc 49, p. 5 ("It cannot be said that Dr. Hucke deliberately disregarded Plaintiff's symptoms. She considered his symptoms and assessed that he would was a good candidate for HCV treatment."). To the contrary, this note amounts to, at best for Defendant Hucke, cursory medical care. When coupled by the inaction that followed and failure to direct anyone to provide Plaintiff with DAA drugs, it is an example of gross incompetence.

For the reasons set forth above, Defendant Hucke's Motion for Judgment on the Pleadings on Count I of Plaintiff's Complaint should be denied.

II. **Defendant Hucke's Motion for Judgment on the Pleadings on Count III of Plaintiff's Complaint Should be Denied Because the Complaint Sufficiently Alleges an Ongoing and Continuous Relationship with Defendant Hucke Under the "Thatcher Rule"/Continuing Care Exception to the Two-Year Statute of Limitations for Medical Malpractice Claims.**

In 1943, the Missouri Supreme Court recognized an exception to the statute of limitations for medical negligence claims where there is a continuing relationship between the patient and the health care provider. *Thatcher v. De Tar*, 173 S.W.2d 760 (Mo. 1943). This is known as the "*Thatcher* Rule" or "the continuing care" exception to the statute of limitations.

Under this exception, the doctor-patient relationship and the duty of continuing care and treatment continues until it is ended by: (1) mutual consent of the parties, (2) reasonable notice and withdrawal by the physician, (3) patient dismissal of the physician, or (4) cessation of the

5

necessity that gave rise to the relationship. *Weiss v. Rojanasathit*, 975 S.W.2d 113, 119-120 (Mo. Banc 1998). *See also Reed v. Laughlin*, 58 S.W.2d 440, 442 (Mo. 1933); *Cazzell v. Schofield*, 8 S.W.2d 580, 587 (Mo. 1928). "Absent good cause to the contrary, where the doctor knows or should know that a condition exists that requires further medical attention to prevent injurious consequences, the doctor must render such attention or must see to it that some other competent person does so until termination of the physician-patient relationship." *Weiss*, 975 S.W.2d at 120. The underlying rationale of the *Thatcher* rule is "based upon the concept that [the exception] stems primarily from the nature of the relationship and that the obligation and treatment be considered as a `whole' until it ceases and the obligations arising therefrom should not be conceptually fragmented." *Shaw v. Clough*, 597 S.W.2d, 215-16 (Mo. App. W.D. 1980).

As alleged, the care provided by Corizon and its agents, including Defendant Hucke, was ongoing and the violations continuing. *See Complaint*, ¶ 74. These allegations are sufficient to bring the Complaint within the *Thatcher* exception. Defendant Hucke saw Plaintiff on February 20, 2017. She documented he was a good candidate for Harvoni. Although Dr. Hucke is apparently no longer with Corizon, she certainly did not obtain consent or provide notice of her withdrawal as Plaintiff's physician, nor did Plaintiff dismiss her. And the need for his relationship with her (i.e., to receive care for complaints), never ceased. In fact, he still has the same complaints and is not receiving treatment despite his need for it.

For these reasons, Defendant Hucke's Motion for Judgment on the Pleadings on Count III of Plaintiff's Complaint should be denied.

WHEREFORE, Plaintiff John Ritchie respectfully requests that this Court deny Defendant Heyden Hucke's Motion for Judgment on the Pleadings and for further relief this Court deems just and proper.

6

RESPECTFULLY SUBMITTED

*/s/ Kevin P. Etzkorn*
Kevin Etzkorn, 56564
ETZKORN & ETZKORN
8821 Manchester Rd.
Brentwood, MO 63144
(314) 596-9361
kevin@etzkornlawyers.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 12, 2020, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Zachary T. Buccheit
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, MO 65102
*Attorneys for Defendants Lombardi and Missouri Department of Corrections*

J. Thaddeus Eckenrode
Dwight Vermette
Alejandro S. Valdez
11477 Old Cabin Rd., Ste. 110
St. Louis, MO 63141
jte@eckenrode-law.com
dav@eckenrode-law.com
asv@eckenrode-law.com
*Attorneys for Defendants Bredeman and Corizon*

James R. Wyrsch, 53197
911 Washington Avenue, Suite 211
Saint Louis, MO 63101
(314) 288-0777
(314) 400-7701 (fax)
james.wyrsch@kwlawstl.com
*Co-Counsel for Plaintiff*

/s/Kevin P. Etzkorn
Kevin P. Etzkorn, 56564